708 F.2d 57
 Roy WILLIAMS, Plaintiff-Appellant,
and
Joseph Christian, as Chairperson of the New York City
Housing Authority, New York City Housing
Authority, Defendants-Appellants,
v.
Samuel R. PIERCE, Jr., as Secretary of the United States
Department of Housing and Urban Development,
United States Department of Housing and
Urban Development, Defendants-Appellees.
 Nos. 884, 968, Dockets 82-6299, 82-6301.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 21, 1983.
Decided May 12, 1983.
 
 1
 David W. Wiltenburg, New York City (William H. Voth, Hughes, Hubbard & Reed, Kalman Finkel and John E. Kirklin, The Legal Aid Society, New York City, on brief), for plaintiff-appellant.
 
 
 2
 Mary McCorry, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, and Walter A. Kretz, Jr., New York City, on brief), for defendants-appellants.
 
 
 3
 Mark C. Rutzick, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., John S. Martin, Jr., U.S. Atty., New York City, Gershon M. Ratner, Dennis G. Linder, Penny Q. Seaman, Washington, D.C., and Jonathan Strong, New York City, on the brief) for defendants-appellees.
 
 
 4
 Before MANSFIELD and MESKILL, Circuit Judges, and NEAHER, District Judge.*
 
 NEAHER, District Judge:
 
 5
 The question presented by this expedited appeal is whether the district court abused its discretion in denying appellants' motions for a preliminary injunction barring the Secretary of the Department of Housing and Urban Development ("HUD") from enforcing interim rules he promulgated in order to carry out his responsibilities pursuant to the Omnibus Budget Reconciliation Act ("OBRA"), which became effective October 1, 1981. Pub.L. No. 97-35, 95 Stat. 357 (1981). That the case is here at all is somewhat ironic in view of Congress' explicit direction in enacting OBRA that:
 
 
 6
 "The Secretary's actions and determinations and the procedures for making determinations pursuant to this subsection shall not be reviewable in any court."
 
 
 7
 Id., Sec. 322(i)(3), 95 Stat. at 400. Since we agree that appellants' claims are not likely to succeed on the merits, we affirm.
 
 Facts
 
 8
 Appellant Roy Williams is a tenant in a federally subsidized low income housing project. Appellant New York City Housing Authority ("NYHA") is his landlord. Prior to the enactment of OBRA, the rental payable by a low income housing tenant such as Williams could not "exceed one-fourth [i.e., 25%] of the family's income as defined by the Secretary." 42 U.S.C. Sec. 1437a. Following the enactment of OBRA, the Secretary of HUD on May 4, 1982, published interim rules required by OBRA's amendments to the United States Housing Act of 1937, as amended. Those amendments provided for increases in the rent of tenants in public and Section 8 housing commencing October 1, 1981, which could be spread over a five-year period with exceptions hereinafter noted.
 
 
 9
 Under his lease with NYHA Williams' rent may be redetermined annually or for interim periods according to amended rent schedules posted by NYHA. His landlord's present schedule of compliance with the Secretary's new regulations will not lead to a rent increase for Williams until February 1, 1984. Nonetheless, he brought this action as a class plaintiff to enjoin the implementation of the Secretary's regulations, naming NYHA as a co-defendant and claiming violation of the due process clauses of the fifth and fourteenth amendments, the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 551 et seq., HUD's own regulations, 24 C.F.R. Sec. 10.1 et seq., and the civil rights laws, 42 U.S.C. Sec. 1983. NYHA elected to join its tenant in seeking a preliminary injunction, hence its appearance as a co-defendant.
 
 Statutory Background
 
 10
 Pursuant to the United States Housing Act, the Secretary of HUD has been authorized since 1937 to make grants of federal funds to state public housing agencies for low income housing programs. He was also empowered to
 
 
 11
 "prescribe regulations fixing the maximum contributions available under different circumstances, giving consideration to cost, location, size, rent-paying ability of prospective tenants, or other factors bearing upon the amounts and periods of assistance needed to achieve and maintain low rentals."
 
 
 12
 42 U.S.C. Sec. 1437 et seq. In 1969 the federal role and contributions for the support of public housing increased significantly when Congress authorized the Secretary to provide operating subsidies for public housing authorities and to extend assistance payments to owners who leased housing units to low or very low income families. In fiscal 1983 the amount appropriated by Congress for such purposes was $1,350,000,000.[1]
 
 
 13
 OBRA was enacted after considerable debate in Congress in order "to reverse the growth of federal spending by systematically reducing the level of expenditures in a wide range of federal programs." Philadelphia Citizens in Action v. Schweiker, 669 F.2d 877, 878 (3d Cir.1982). One of the affected programs was federally-assisted housing. A step in this direction had already been taken in 1979 when, except for very low income families, the rental ceiling for such housing was raised to permit rental charges of up to 30% of monthly adjusted income. See 42 U.S.C. Sec. 1437a (Supp. IV 1980). Under OBRA, however, a uniform formula was adopted by Congress requiring all occupants of public and other federally-assisted housing to pay the highest of the following amounts: 30% of the family's monthly adjusted income,[2] or 10% of the family's total income, or whatever portion of monthly welfare assistance payments was specifically designated for housing costs. OBRA, Sec. 322(a), 95 Stat. at 400 (codified at and superseding 42 U.S.C. Sec. 1437a).
 
 
 14
 Although Congress decreed that the new rent levels were to become effective as of October 1, 1981, it was not unmindful that its action would place a burden upon tenants in federally-assisted housing. To ease that burden, it gave the Secretary authority to "provide for delayed applicability, or for staged implementation" of the new rent levels for existing occupants and, under narrower circumstances, for new tenants, i.e., those who commenced occupancy after October 1, 1981. Sec. 322(i)(1) and (2). Moreover, annual rent increases for current tenants based upon OBRA were limited to 10% of the previous rent. Id. Finally, although Congress required that any phase-in for affected tenants must be fully applicable no later than five years from October 1, 1981, it also provided an exception in case of extraordinary hardship for any class of tenants. Sec. 322(i)(3).
 
 The Interim Rules
 
 15
 In view of the October 1, 1981, effective date of the increased rent levels required by OBRA, the Secretary of HUD was obliged to effectuate the will of Congress by promulgating promptly appropriate rules and regulations to provide guidance to state housing authorities and other recipients of federal assistance grants. The record discloses that an initial draft of a proposed regulation had been prepared and circulated for internal agency review on or about September 22, 1981, some five weeks after the President had signed OBRA into law. In the course of that review questions arose as to whether the Secretary had good cause to forego prior notice and comment under HUD's own regulations, 24 C.F.R. Part 10, and could promulgate an interim rule rather than a proposed regulation. Those questions were complicated by a current district court decision in the Third Circuit which had invalidated and enjoined enforcement of "interim rules" issued by the Secretary of Health and Human Services (HHS) to implement OBRA as it applied to his agency. The district court had held that HHS in issuing interim rules had improperly avoided prior notice and comment procedures mandated by the APA, 5 U.S.C. Secs. 500-576. On appeal, however, the Third Circuit Court of Appeals reversed (one judge dissenting), holding that the Secretary had good cause to dispense with notice and comment procedures under the APA in light of his finding that congressional concern for immediate reduction in government spending, and the short time provided for implementing the statutory amendments, rendered such procedures impracticable. Philadelphia Citizens, 669 F.2d at 882, rehearing and rehearing in banc denied February 10, 1982.
 
 
 16
 Following the appellate ruling in Philadelphia Citizens, HUD prepared identical interim rules limited to implementing the statutory increases in rent contribution rates for public housing and Section 8 tenants, based upon current definitions of income and adjusted income. Exercising the flexibility provided in Sec. 322, the interim rules provided for gradual increases of rent for existing tenants and restricted the increase in any twelve-month period to a maximum of 10%. the 5% overall statutory increase based on adjusted income (25% to 30%) was to be phased in at 1% a year beginning with the federal fiscal year 1982, but in no case would the family's gross rent increase by more than 10% in any twelve-month period.
 
 
 17
 Pursuant to Executive Order and statute the proposed rules were submitted on March 5, 1982, for review by the Office of Management and Budget and subsequently transmitted to the House and Senate Banking Committees. Although HUD requested waiver of congressional deferral periods, none were granted. Publication in the Federal Register for purposes of comment was thus not possible until May 4, 1982. 47 Fed.Reg. 19120, 19128. The HUD notices fixed June 18, 1982, as the due date for comments but pointed out that the rules were not to become effective for 30 calendar days of continuous session of Congress after the rules were published as final. 47 Fed.Reg. 19121.
 
 
 18
 Further delay ensued when the House Committee on Banking, Finance and Urban Affairs reported out on June 2, 1982, a resolution of disapproval of the interim rules which, if valid, would have delayed their effective date for 90 days from the date of the resolution. See 42 U.S.C. Sec. 3535(o )(3). Acting upon advice from the Department of Justice that the further 90-day deferral period was unconstitutional, the Secretary of HUD determined to put the rules into effect on August 1, 1982. This was done by publication in the Federal Register on July 16, 1982, which set forth the Secretary's reasons for that action. 47 Fed.Reg. 30969, 30970. Formal notification of the new rules was sent on July 27, 1982, to public housing agencies and others involved in Section 8 housing assistance programs.
 
 Discussion
 
 19
 The threshold question we must address is whether the Secretary's interim rules are judicially reviewable at all. As noted supra, Congress plainly specified in Sec. 322(i)(3) of OBRA that "actions and determinations" of the Secretary and his "procedures for making determinations" to implement Congress' directions "shall not be reviewable in any court." The interim rules appellants seek to enjoin are in themselves actions, determinations and procedures of the Secretary designed to provide technical implementation of the new rents which Congress decreed were to be paid by tenants in subsidized housing. As the district court observed, the legislative history reveals that
 
 
 20
 "[t]he unreviewability provision is intended to insure that the courts and the Department will not be burdened by expensive and time-consuming litigation over the technical implementation of the rental increase phase-in."[3]
 
 
 21
 When the command of a statute is clear, it must be enforced. Barlow v. Collins, 397 U.S. 159, 167, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970). Appellants' efforts to read the unreviewability provision out of OBRA by arguing that the Secretary's actions, failures to act, or determinations made in formulating and promulgating his interim rules fall outside the scope of the statute is sheer sophistry. Aside from the explicit inclusion of "procedures for making determinations" in Sec. 322(i)(3)--which the interim rules in themselves clearly are--the very terms "actions" and "determinations" would embrace the Secretary's decision to proceed as he did here. We hold that the statute is clear on its face and that the Secretary's actions, determinations and procedures for implementing the will of Congress expressed in Sec. 322(i) are precluded from judicial review.
 
 
 22
 Appellants' remaining contentions are equally without merit. The subsidies provided for public housing clearly relate to "grants, benefits, or contracts," which exempt the Secretary's rulemaking from the provisions of the APA. 5 U.S.C. Sec. 553(a). The Secretary has not wholly waived that exemption but has reserved the right to omit notice and public procedure in a particular case where it is "impracticable, unnecessary or contrary to the public interest." 24 C.F.R. Sec. 10.1. We agree with the Third Circuit "that Congress, by setting an effective date so close to the date of enactment, expressed its belief that implementation of the amendments" made in OBRA was urgent, and that the Secretary's early promulgation of the interim rules reflected the will of Congress. See Philadelphia Citizens, 669 F.2d at 885. Furthermore, we also agree with the district court that neither appellant had standing to complain of the August 1, 1982, implementation date, since no injury resulted from HUD's non-compliance with 42 U.S.C. Sec. 3535(o )(3).
 
 
 23
 The order denying a preliminary injunction is affirmed and the case is remanded to the district court with directions to dismiss the complaint and cross-complaint for want of jurisdiction.
 
 MANSFIELD, Circuit Judge (dissenting):
 
 24
 I respectfully dissent. The Department of Housing and Urban Development ("HUD") claims the right to violate its own regulations obliging it to give a 60-day period to the public within which to comment on proposed rules before they are issued in final form. Its justification for this violation of its own rules is the purported need for swift action. This argument is vitiated, however, by the fact that HUD itself created whatever "urgency" existed by its own sluggish internal consideration of the proposed rules over a period of nearly seven months. It is anomalous and contrary to the public interest for a public agency, after frittering away seven months on its internal reflection upon the advisability of a proposed rule, to conclude suddenly that it cannot spare 60 days to obtain the public's views, comments and criticisms, which often lead to beneficial changes and revisions. I think we should decline to endorse HUD's extraordinarily casual approach to the right of the public to comment on proposed rules before those rules are imposed on it. To uphold HUD's action is to eliminate a valuable procedure and seriously weaken the usefulness of judicial review.
 
 
 25
 On August 13, 1981, the Omnibus Budget Reconciliation Act of 1981 ("OBRA") became law. One of its many provisions, Sec. 322, mandated that rents for tenants in federally-assisted low-income housing be raised from 25% to 30% of their "monthly adjusted income." OBRA Sec. 322(a), 95 Stat. 357, 400, 42 U.S.C. Sec. 1437a(a)(1). HUD, the agency charged with implementing this provision, was given considerable discretion in deciding how to do so. Although the rent increase technically was mandated to go into effect on October 1, 1981, HUD was given five years to implement the rent increase fully. OBRA Sec. 322(i)(3). Indeed, HUD was given discretion to extend even that deadline if full implementation "would result in extraordinary hardship for any class of tenants." Id. HUD was also given considerable leeway as to the manner in which it would implement the rent increase during the five-year period set by the statute. For current tenants, HUD could delay or phase in the rent increase if "immediate application would be impracticable, would violate the terms of existing leases, or would result in extraordinary hardship for any class of tenants." Id. Sec. 322(i)(1). For new tenants, HUD could likewise delay or phase in implementation if immediate rent increases would be "impracticable," or if it would significantly reduce administrative costs to keep rents uniform between current and new tenants. Id. Sec. 322(i)(2).
 
 
 26
 From August 1981 until early March 1982, HUD deliberated internally about how to implement the 5% rent increase. In early March 1982, HUD submitted a set of proposed rules to the Office of Management and Budget ("OMB") for review. In late March 1982, OMB completed its review and HUD submitted the proposed rules to the House and Senate Banking Committees for review, as is required under 42 U.S.C. Sec. 3535(o ).
 
 
 27
 Following this congressional review, the rules were published on May 4, 1982 in the Federal Register. 47 Fed.Reg. 19120. The rules provided that rents would be increased 1% per year over five years for existing tenants, but would be increased 5% immediately for new tenants. This May 1982 publication in the Federal Register was the first time that the public was given either formal or informal notice of the proposed rules.
 
 
 28
 Although the new standard was nominally labeled an "interim rule," id. at 19122, in fact it was a final rule: HUD stated that the rule would "become effective as soon as possible and prior to the receipt of public comment." Id. (emphasis added). HUD did state that public comments "will be received for a 45-day period following publication," id., but also stated that it was declining to permit public comment before publication of the final rule because the changes made by the rule "flow directly from legislative changes without additional exercise of discretion and because of the public interest in the implementation of the legislation, which became effective on October 1, 1981." Id. On July 16, 1982, HUD announced that the new regulations would be effective August 1, 1982. 47 Fed.Reg. 30969. In short, since the rules were to go into effect regardless of public comment, the latter was obviously discouraged, even if made during the 45-day period.
 
 
 29
 Plaintiff Roy Williams, a current resident of federally-subsidized public housing in New York City, is legally blind and the sole parent of two children. On August 9, 1982, he filed suit to enjoin the implementation of the rules. The New York City Housing Authority ("NYCHA"), although nominally a defendant, later joined in Williams' claims against HUD as a cross-claimant. As the majority has described, the district court rejected the challenges of Williams and the NYCHA to the rules.
 
 
 30
 The majority finds that we are barred from reviewing HUD's actions in implementing Sec. 322 of OBRA by subsection (i)(3) of that section, which provides in pertinent part:
 
 
 31
 "The Secretary's actions and determinations and the procedures for making determinations pursuant to this subsection shall not be reviewable in any court." (Bracketed numerals added).
 
 
 32
 The Supreme Court has repeatedly emphasized that such provisions purporting to bar judicial review of agency action must be construed narrowly, since they raise serious constitutional questions. See Johnson v. Robison, 415 U.S. 361, 366-67, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); Abbott Laboratories v. Gardner, 387 U.S. 136, 139-41, 87 S.Ct. 1507, 1510-11, 18 L.Ed.2d 681 (1967); see also Ralpho v. Bell, 569 F.2d 607, 617 (D.C.Cir.1977) ("[i]nterpretation of [provisions barring judicial review] should be guided ... by the recognition that unreviewability gives the executive 'a standing invitation to disregard ... statutory requirements and to exceed the powers conferred' ....").
 
 
 33
 The majority argues that what appellants are challenging is a "procedure for making determinations," which is precluded by Sec. 322. This loose statutory construction is inappropriate in the context of interpretation of a provision that blocks judicial review. In the context of Sec. 322 of OBRA, "determination" clearly refers to fact finding, such as a determination whether or not immediate application of the rent increase to new tenants would be "impracticable." Sec. 322(i)(2). Appellants challenge neither HUD's fact finding, nor its procedures for finding facts; nor do they challenge the substance of HUD's "action" in raising rents.
 
 
 34
 What appellants do challenge is HUD's "procedure for taking actions"--i.e., its procedure for making rules, which is conspicuously omitted from the unreviewable matters listed in Sec. 322(i)(3) and therefore not precluded from being challenged. This reading of the judicial review provisions cannot be dismissed as "sheer sophistry" (Op. p. 61) but, on the contrary, is called for under Johnson v. Robison, supra; moreover, an insistence on proper procedure and attention to public comments is particularly warranted when an agency has unreviewable substantive discretion. Since HUD has not presented "clear and convincing evidence" that Congress intended to bar review of HUD's refusal to follow proper procedures in formulating rules under Sec. 322, I would find that review is not precluded. See Abbott Laboratories, supra, 387 U.S. at 141, 87 S.Ct. at 1511.
 
 
 35
 The next question is whether HUD followed applicable regulations in promulgating the rent increase rules. HUD's action here is governed by its own regulations which state that it is HUD's policy "to afford the public not less than sixty days for submission of comments" before rules are published in final form and that HUD may omit public notice and comment if it determines "that notice and public procedure are impracticable, unnecessary or contrary to the public interest." 24 C.F.R. Sec. 10.1. These rules were promulgated in 1979 pursuant to an Executive Order of the President requiring agencies to improve their procedures for providing the public with an "early and meaningful" opportunity to comment on proposed agency rules. See Executive Order 12044, 43 Fed.Reg. 12662. This occurred after HUD had previously agreed in 1976 to "comply with rule making provisions of [the APA] with respect to all HUD programs and functions." 41 Fed.Reg. 33910.
 
 
 36
 HUD argues that it may not be held to compliance with these published procedural requirements modeled after the APA. While not every internal agency rule is enforceable against an agency, see United States v. Caceres, 440 U.S. 741, 754 n. 18, 99 S.Ct. 1465, 1472 n. 18, 59 L.Ed.2d 733 (1979), it is well-established that regulations promulgated under statutory authority have the force and effect of law, see United States v. Nixon, 418 U.S. 683, 695-96, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974), and that an agency is bound by its own formal, published regulations that protect important rights of the public. See Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); Vitarelli v. Seaton, 359 U.S. 535, 540-45, 79 S.Ct. 968, 973-75, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Pearce v. Director, Office of Workers' Compensation, 647 F.2d 716, 726-27 (7th Cir.1981); compare American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 538-39, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970) (agency may waive internal rule designed only for "orderly transaction of business before it," not for benefit of persons outside the agency). The right of public housing tenants to be informed of proposed changes in rules vitally affecting their lives surely qualifies under this standard, and HUD must therefore be held to compliance with its own procedural requirements.
 
 
 37
 It is undisputed that HUD failed to provide the 60-day notice and comment period called for by 24 C.F.R. Part 10.1. HUD defends its actions, however, by arguing that the exception in its rules for cases in which public comment would be "impracticable, unnecessary or contrary to the public interest" is applicable here. Such a defense is wholly unpersuasive. HUD gave two reasons for declining to listen to public reaction before promulgating the rent increase in final form. First, HUD stated that "this rule flow[s] directly from legislative changes without additional exercise of discretion." 47 Fed.Reg. 19122. This is simply false; as noted above, Congress gave HUD considerable latitude in implementing the rent increase called for by Sec. 322. See Sec. 322(i)(1)-(3).
 
 
 38
 HUD's second reason was that the "public interest" lay in immediate implementation of the rent increase. If such a conclusory statement were accepted as establishing an exception to the public comment rule, however, it would "swallow the rule." Mobil Oil v. Department of Energy, 610 F.2d 796, 803 (Temp.Emer.Ct.App.1979), cert. denied, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). HUD was in no position to proclaim the need for expedition when it had itself dragged its feet for seven months to produce an extremely simple rule. See Consumers Union v. Sawhill, 393 F.Supp. 639, 641 (D.D.C.) ("[A]ny emergency which existed necessitating immediate [action] was created by the agency itself."), affd., 523 F.2d 1404 (Em.App.1975).
 
 
 39
 Moreover, under the analogous provisions of the APA, 5 U.S.C. Sec. 553(b)(B), exceptions to the requirement of a public comment period are permitted only in the narrowest of circumstances, such as when advance notice would adversely affect the market being regulated, see Nader v. Sawhill, 514 F.2d 1064, 1068-69 (Em.App.1975), or when the agency has a truly imminent statutory deadline, see Philadelphia Citizens in Action v. Schweiker, 669 F.2d 877 (3d Cir.1982) (agency given 49 days to act); see also National Nutritional Foods Association v. Kennedy, 572 F.2d 377, 383-86 (2d Cir.1978) (rejecting agency argument that notice and public comment were properly omitted under Sec. 553(b)(B)). Indeed, several courts have rejected agency claims of exigent circumstances even in the face of a congressionally-imposed "tight schedule," see, e.g., State of New Jersey v. EPA, 626 F.2d 1038, 1042-48 (D.C.Cir.1980); U.S. Steel Corp. v. EPA, 595 F.2d 207, 213, modified on other grounds, 598 F.2d 915 (5th Cir.1979); see also American Iron and Steel Institute v. EPA, 568 F.2d 284, 291-92 (3d Cir.1977). Since HUD has provided the court with no plausible reason why it could not have given the public the brief comment period to which it was entitled, I would not make an exception in the present case.[1]
 
 
 40
 Nor did the 45-day "comment period" permitted by HUD after it had already made up its mind satisfy the requirements of Sec. 10.1. Once the final rule is issued, to have a period for comments is somewhat of a charade since all know that, the die having been cast, "the decisionmaker is likely to resist change." Sharon Steel v. EPA, 597 F.2d 377, 381 (3d Cir.1979); State of New Jersey v. EPA, supra, 626 F.2d at 1049-50; Kollett v. Harris, 619 F.2d 134, 145 (1st Cir.1980).
 
 
 41
 I would therefore find that appellants are likely to succeed on the merits in their challenge to HUD's rulemaking procedure. There remains a question whether they have shown irreparable harm. Although the district court did not make a final ruling on Williams' claim of irreparable harm, it commented as follows on that issue:
 
 
 42
 "Although purely monetary harm does not usually provide a basis for equitable relief, it can have serious and irreparable corollary effects when low income persons are the injured parties. The threatened rent increase in this case could force plaintiff and others ... to either forgo basic necessities in order to make higher rental payments, on the one hand, or face eviction because of their inability to pay higher rent, on the other hand. In either case, the harm suffered by low-income tenants would be irreparable." Opinion of 10/22/82 at 20.
 
 
 43
 I agree. HUD responds that if NYCHA adheres to its present plan for adjusting tenant rents, Williams' rent may not be adjusted until February 1984. They therefore contend that any harm to Williams is speculative.
 
 
 44
 I disagree. The NYCHA is legally empowered to raise Williams' rent on 30 days notice; moreover, HUD is exerting pressure on NYCHA to put the rent increase into effect immediately, and NYCHA risks sanctions for failing to do so. Although Williams may be spared for several months if he is fortunate, I agree with the observation of this Court in Carey v. Klutznick, 637 F.2d 834, 837 (2d Cir.1980), that "although the irreparable injury that [appellants] seek to assert [is] a 'possibility,' every irreparable injury is merely a possibility until it is actual and can no longer be averted." Under these circumstances, I am sympathetic to Williams' argument that the government should not be permitted, in litigation with poor and powerless citizens such as Williams, to evade review of its actions by arguments that any time a citizen may try to seek relief is the wrong time. Williams Reply Br. at 17.
 
 
 45
 For these reasons I would reverse the judgment of the district court and direct it to enjoin the implementation of HUD's rent increase rules.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 See Pub.L. 97-272, 96 Stat. 1160, 1161 (Sept. 30, 1982)
 
 
 [2]
 Adjusted monthly income is calculated by subtracting 5% of total income, $25 per month for every minor child, and possibly other amounts from a family's total income. 24 C.F.R. Sec. 860.403(f) (1982)
 
 
 [3]
 Hearings Before The Subcommittee on Housing and Community Development of the House Committee on Banking, Finance and Urban Affairs, 97th Cong., 1st Sess., Serial No. 97-10, 655 (April 6-9, 1981)
 
 
 [1]
 The majority's suggestion that this case is analogous to Philadelphia Citizens, supra, 669 F.2d 877 (3d Cir.1982), is surprising. That case involved the response of the Department of Health and Human Services ("HHS") to the portions of OBRA that were relevant to that agency. Unlike in the present case, HHS had a strict deadline to meet in preparing regulations--49 days from the enactment of OBRA, which obviously precluded waiting 60 days for public comment. Id. at 883. Moreover, HHS, unlike HUD in the present case, actively sought informal comments from affected parties before issuing its regulations, see id. at 880, gave a lengthy explanation of why public comment was impracticable, see id. at 882 n. 4, and stated that it was "interested in comments and advice regarding changes which should be made" to the published rules, id. The eminent good faith of HHS in attempting to comply with notice-and-comment requirements is in sharp contrast to the conduct of HUD in the present case