782 F.2d 363
 Angela SEPULVEDA, and Hilda Rodriguez, on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellants,
v.
John BLOCK, individually and in his capacity as Secretary of
the United States Department of Agriculture; Cesar Perales,
individually and in his capacity as Commissioner of the New
York State Department of Social Services; James Krauskopf,
individually and in his capacity as Commissioner of the New
York City Department of Social Services; and the New York
City Department of Social Services, Defendants-Appellees.
 No. 368, Docket 85-6197.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 21, 1985.
Decided Jan. 31, 1986.
 
 Lucy Billings, Bronx, N.Y. (Ann McDonald, Bronx Legal Services, of counsel), for plaintiffs-appellants.
 Jordan Stanzler, New York City (Maryellen Chomsky, Judith T. Kramer, and Susan D. Wagner, of counsel) for defendants-appellees.
 Before PIERCE, MINER and DAVIS,* Circuit Judges.
 DAVIS, Circuit Judge:
 
 
 1
 The question is whether the Secretary of Agriculture violated the Administrative Procedure Act (APA) in promulgating an interim regulation without prior public notice and an opportunity to comment. We hold that the Department of Agriculture (USDA) had "good cause" pursuant to section 553(b)(B) of the APA to dispense with prior notice and comment in publishing this interim rule. We decide this issue of "good cause" even though the district court did not reach it. The "good cause" defense was raised by the USDA below and does not require further fact-finding or ventilation. There is no need for a remand. Accordingly, we affirm (on a different ground) the district court's grant of the summary judgment to the defendants and its dismissal of the plaintiffs' complaint.
 
 I.
 
 2
 The Omnibus Budget Reconciliation Act (OBRA 82) Pub.L. No. 97-253, 96 Stat. 772, was signed into law on September 8, 1982. Under that statute, Congress mandated revisions to the Food Stamp Act of 1977, 7 U.S.C. Sec. 2011, et seq., which were designed, inter alia, to reduce federal spending by disallowing certain "double dipping" deductions from the income of food stamp recipients for the purpose of determining the amount of food stamps to which they were entitled. Congress set September 8, 1982, the date of enactment, as the day on which the changes were to take effect.
 
 
 3
 To implement the revisions mandated by OBRA 82, the USDA, which is charged with administering the Food Stamp Program, issued interim rules on November 16, 1982, to be effective immediately. 47 Fed.Reg. 51552-53 (1982). These rules were issued without prior public notice and comment. On June 21, 1983, USDA promulgated its final regulation after soliciting comment pursuant to the notice of rulemaking of November 16, 1982. 48 Fed.Reg. 28190 (1983).
 
 
 4
 On February 29, 1984, plaintiffs-appellants, Angela Sepulveda and Hilda Rodriguez, filed suit in the United States District Court for the Southern District of New York against defendants, New York state and city officials and the Secretary of the USDA, alleging that the interim rules had not been promulgated in accordance with the requirements of the APA, 5 U.S.C. Sec. 553. In their prayer for relief, the plaintiffs requested (1) an order declaring the interim rule void and enjoining its further implementation, and (2) the restoration to all food stamp recipients of any food stamps lost as a result of the interim rule.[1]
 
 
 5
 In response to appellants' complaint, the USDA filed an answer on May 20, 1984, asserting that the complaint failed to state a claim upon which relief could be granted. On October 17, 1984, appellants moved for summary judgment and on December 3, 1984, the USDA cross-moved for summary judgment. The latter argued that, since the interim rule was interpretative, the rule was exempt from the notice and comment requirements of the APA and, alternatively, that there was "good cause" to dispense with such requirements in accordance with 5 U.S.C. Sec. 553(b)(B).
 
 
 6
 On April 26, 1985, the district court issued a Memorandum Opinion and Order granting summary judgment to USDA and dismissing appellants' complaint. The court held that the challenged regulation tracked the statute and was, therefore, an "interpretative rule" exempt from the notice and comment requirements under 5 U.S.C. Sec. 553(b)(A). As we have said, the district court did not reach the other defense of the "good cause" exception. We find it appropriate to dispose of this appeal solely on the latter basis.
 
 II.
 
 7
 The Food Stamp Program was created to "safeguard the health and nutrition of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. Sec. 2011. Under the statutory program, food stamps are provided to low-income households in an amount determined by the net income for the individual households. Prior to the enactment of OBRA 82, net income specifically excluded a standard deduction and certain limited itemized deductions. Among these itemized deductions were (1) an "excess shelter expense" deduction under which recipients were allowed to deduct a "standard utility allowance," and (2) a deduction for housing costs which permitted recipients to deduct rent and mortgage payments. Where a recipient's rent or mortgage payments included heating and cooling costs, the recipient received a double benefit under that prior law.
 
 
 8
 A primary purpose of the OBRA 82 amendments to the Food Stamp Act of 1977 was to "correct basic flaws arising from the use of a standard utility allowance" when calculating an applicant's net income for benefit or eligibility purposes. See S.Rep. No. 504, 97th Cong., 2d Sess. 32, reprinted in 1982 U.S.Code Cong. & Ad.News 1641, 1671. One means by which the amendment accomplished this purpose was by narrowing the number of individuals permitted to deduct the "standard utility allowance" when calculating their net income so that the double benefit conferred upon individuals who deducted both the standard utility allowance and the utility portion of their housing costs was eliminated.[2]III.
 
 
 9
 Appellants argue that the promulgation of the interim rules did not comply with the requirements of the APA, 5 U.S.C. Sec. 553. Ordinarily, the APA requires an agency to provide notice of proposed rulemaking and a period of public comment before the promulgation of a new regulation. 5 U.S.C. Sec. 553(b)-(c). However, section 553(b) of the APA specifically provides that the notice and comment requirements do not apply
 
 
 10
 (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
 
 
 11
 (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.
 
 
 12
 In the case before us, there was plainly "good cause" for dispensing with the requirements for notice and comment. The legislative history of OBRA 82 reflects the Senate Agriculture Committee's dissatisfaction with the slow implementation of OBRA 81 and its desire to have regulations under OBRA 82 issue much more quickly.[3] The congressional intent to terminate immediately the "double dipping" allowance was further evident from the provisions of OBRA 82 which set the enactment date as the effective date of the statute.[4] See Williams v. Pierce, 708 F.2d 57 (2nd Cir.1983), cert. denied, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). Once the statute was enacted (especially in view of the strong congressional intent to expedite its implementation), the Secretary of USDA was obligated to notify the state agencies of the revisions as soon as possible.[5] This combination of elements was certainly sufficient to meet the "good cause" exception of Sec. 553(b)(B), supra. Lastly, the condition that the agency incorporate a finding of "good cause" in its rule or regulation was fulfilled here, since the interim regulation expressly provided that such "good cause" did exist in this instance. 47 Fed.Reg. 51551 (1982).
 
 
 13
 For these reasons, we affirm the district court's decision on defendants' motion for summary judgment and its dismissal of the appellants' complaint. Since a finding of "good cause" is adequate to justify that judgment, we do not consider or reach the issue of whether the interim rule was an "interpretative rule."
 
 
 14
 Affirmed.
 
 
 
 *
 Honorable Oscar H. Davis, of the United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 Appellants, in their original complaint, sought class certification on behalf of "all food stamp households applying for food stamps in New York as of March 16, 1982 and any households applying from that date forward" who were affected by the regulation. Appellants' motion before the district court for class certification was made on October 17, 1984, and was denied on April 26, 1985
 
 
 [2]
 The statute, as amended, provides in pertinent parts:
 In computing the excess shelter expense deduction ... under clause (2) of the preceding sentence, a State agency may use a standard utility allowance in accordance with regulations promulgated by the Secretary, except that a State agency may not use an allowance which does not fluctuate within a year to reflect seasonal variations. An allowance for a heating or cooling expense may not be used for a household that does not incur a heating or cooling expense, as the case may be, or does incur a heating or cooling expense but is located in a public housing unit which has central utility meters and charges households, with regard to such expense, only for excess utility costs. No such allowance may be used for a household that shares such expense with, and lives with, another individual not participating in the food stamp program, another household not participating in the food stamp program, or both, unless the allowance is prorated between the household and the other individual, household, or both.
 7 U.S.C. Sec. 2014(e) (1982) (emphasis added).
 
 
 [3]
 The Senate report states:
 The Committee has been concerned by the slow pace with which some of the provisions enacted in recent years have been implemented. The Department has not yet implemented all of the provisions contained in the Omnibus Budget Reconciliation Act of 1981 or the Food Stamp and Commodity Distribution Amendments of 1981.
 To address concerns about the overly broad discretion as to implementation granted to Administrations in recent years, the Committee adopted specific dates by which the Committee would expect previously-passed legislation and the Committee recommendations contained in this legislation to be fully implemented.
 S.Rep. No. 504, 97th Cong., 2d Sess. 81, reprinted in 1982 U.S.Code Cong. & Ad.News 1641, 1719.
 
 
 [4]
 The Senate bill which provided for an effective date of October 1, 1982 and an implementation date of January 1, 1984 was rejected by Congress in favor of the House bill which made the statute effective upon enactment. See H.Rep. No. 759 (conference report), 97th Cong., 2d Sess. 74, reprinted in 1982 U.S.Code Cong. & Ad.News 1641, 1869
 Levesque v. Block, 723 F.2d 175, 184-85 (1st Cir.1983), dealing with OBRA 81, was significantly different because there Congress did not make the statute effective on enactment--as Congress decidedly did for OBRA 82.
 
 
 [5]
 The interim regulation specifically called attention to this factor as a good cause for dispensing with notice and comment. 47 Fed.Reg. 51551 (1982)